TOWNSEND AND TOWNSEND AND CREW LLP
GREGORY S. GILCHRIST (Bar # 111536)
TIMOTHY R. CAHN (Bar # 162136)
Two Embarcadero Center, 8th Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300
E-mail: gsgilchrist@townsend.com; trcahn@townsend.com

Attorneys for Plaintiff
WILLIAMS-SONOMA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAMS-SONOMA, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>TARGET CORP., a Minnesota corporation,<br><br>Defendant. | Case No. C 06 7491 RS<br><br>**COMPLAINT FOR TRADE DRESS INFRINGEMENT, AND VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**<br><br>**JURY TRIAL DEMAND** |

Plaintiff WILLIAMS-SONOMA, INC. ("WSI"), a California corporation, alleges as follows:

**INTRODUCTION**

1.  The purpose of this lawsuit is to seek damages and injunctive relief to stop defendant Target Corp. ("Target") from indiscriminately copying Williams-Sonoma, Inc.'s ("WSI") product designs, including product designs that are copyrighted or are signature WSI products that are inherently distinctive and associated by consumers exclusively with WSI. Target holds itself out as an innovative designer for the home and yet, in many cases, simply misappropriates WSI's designs. Unless it is enjoined from further such copying and misappropriation of WSI's goodwill, WSI will suffer substantial ongoing and irreparable harm.

**THE PARTIES**

2.  WSI is a premier specialty retailer of home furnishings, including furniture, appliances

1  and accessories for kitchens, bedrooms and bathrooms, as well as teenage, children's and baby's
2  rooms. In addition to furniture, WSI's brands offer decorative accessories, linens, rugs, tableware,
3  seasonal items and other similar products and accessories. WSI sells nationwide through retail stores,
4  catalogs and the internet. In addition to the well-known Williams-Sonoma® brand, the company
5  operates Pottery Barn®, PBteen®, pottery barn kids®, west elm® and Williams-Sonoma Home™
6  divisions. Within the Pottery Barn® and pottery barn kids® brands, WSI distributes and sells through
7  a national chain of retail stores in addition to its internet and catalog businesses. The Pottery Barn®
8  family of brands is among the most well respected in the home furnishings business and WSI's
9  trademarks and related trade dress have enormous goodwill among consumers. WSI is headquartered
10 in San Francisco, California.

11         3.     Target is one of the largest retailers in the country. It sells a huge range of products,
12 including many products that are directly competitive with WSI, in Target's vast number of large, "big
13 box" retail stores located throughout the country, as well as through its web site. Recently, Target has
14 deployed an extensive advertising campaign designed to differentiate itself from other large, discount
15 retailers such as Wal-Mart and K-Mart as being more upscale with a greater assortment of branded
16 and designer products. Target is headquartered in Minneapolis, Minnesota.

**JURISDICTION AND VENUE**

18         4.     Plaintiff's first and second claims for trademark infringement/unfair competition and
19 for copyright infringement arise under the Federal Lanham Act and Copyright Act, for which
20 jurisdiction is conferred under 28 U.S.C. § 1338(a) and (b), 28 U.S.C. § 1331 and 15 U.S.C. § 1121.
21 The Court has supplemental jurisdiction over all other claims under U.S.C. § 1367.

22         5.     Venue is proper in this Court under 28 U.S.C. §§ 1391(a) and (b) because Target
23 operates stores and sells products bearing the infringing trade dress in this judicial district and a
24 substantial part of the events giving rise to WSI's claims arose here.

25         6.     Intradistrict assignment to any division is proper under Local Rule 3-5(b) and 3-2(c) is
26 proper because a substantial part of the alleged events, occurred in one or more of the counties listed
27 in Local Rule 3-2(d).

**WSI'S INTELLECTUAL PROPERTY**

7.     WSI devotes significant resources to developing innovative and inherently distinctive products to sell in its retail channels. Given the nature of WSI's business, seasonal product offerings, particularly for decorative items, are important to its business. Accordingly, WSI is well known for its signature seasonal and holiday products, some new for each season and some that are repeated year after year. WSI devotes an enormous amount of product development and quality control resources to these products to ensure that they are reflective of and consistent with its brands' prestige. These products accompany a range of other products for the home that also often are the product of WSI's proprietary designs or innovations.

8.     Among these products, WSI has developed a set of unique and distinctive Christmas stockings that it offers in all of its pottery barn kids® sales channels. Although the stockings each bear different holiday icons (*e.g.* reindeer or Santa) and may change slightly from year to year, they are based on a signature pattern as shown in Exhibit A. The toe is red and white gingham (itself a signature fabric pattern that WSI's Pottery Barn® brands use widely in their Christmas products), generally joined to the foot of the stocking by a band of corduroy or other flexible material which renders, together with white quilted material across the foot, an undulating snow scene. This snow scene is topped in the ankle/instep area with light blue or red quilting displaying a smattering of snow flakes, which is topped with a band of white quilting and another band of red and white gingham. (The products having this signature pattern are referred to in this Complaint as "Pottery Barn Christmas Stockings").

9.     This distinctive combination of features also are used in related holiday decorations such as a Christmas Tree skirt. See Exhibit B.

10.    The Pottery Barn Christmas Stockings have been sold since 2002 and have been featured in high profile presentations in pottery barn kids® catalogs (including covers and large internal photographs). See Exhibits C-G. Since they were first sold, WSI has distributed over 75 million catalogs featuring the stockings and their inherently distinctive signature design. They also are featured in retail stores that are responsible for millions of consumer visits each winter holiday season, as well as throughout the pottery barn kids® website, including on the home page, at

potterybarnkids.com. Between 2002 and 2005, WSI sold well over $5 million of the Pottery Barn Christmas Stockings. Projected sales for 2006 are several million dollars. As a result of this extensive marketing and sales effort, the stocking's signature elements and design features are associated by consumers exclusively with Pottery Barn and its related brands.

11. Beginning in the Halloween season of 2002, Pottery Barn offered its "Scary Tree", a wire tree holding orange votive holders as shown in Exhibit H. The tree was an original design, owned and copyrighted by WSI. (Registration No. VAu564-745-173, attached as Exhibit I.) The tree is made of twisted brown wire that forms roots, a trunk and branches from which the orange votive holders are supported.

12. WSI also has developed products, including linens, rugs, tableware, lamps and furniture, from distinctive proprietary designs, some of which are likely to be strongly associated exclusively with WSI or its brands. Many such items have been unabashedly copied by Target in its attempt to portray itself as a stylish, innovative retailer, including a spiral votive holder designed by WSI that already has been the subject of a prior dispute and settlement.

**TARGET'S MISAPPROPRIATION OF WSI'S INTELLECTUAL PROPERTY.**

13. Beginning in 2006, Target introduced a Christmas stocking that is a copy of the signature pattern used in the Pottery Barn Christmas Stockings. See Exhibit J. The Target stocking contains every distinctive element of the Pottery Barn Christmas Stockings, starting from the gingham at the toe, the white snow scene leading to a light blue sky with snowflakes and topped by white and then red and white gingham. The copying extends even to the red zig zag stitching that borders the gingham pieces.

14. The Target stockings have been offered in Target's retail stores as well as on its web site. It, like WSI, offers Christmas Tree skirts that mimic the pattern and icons used on the Pottery Barn Christmas Stockings.

15. This copying of WSI's proprietary and signature designs is just the latest example in a long line of products and designs that have been copied by Target. In 2004, Target offered a Halloween tree that replicated WSI's copyrighted design for its Scary Tree. (Exhibit K.) In the same year, Target also offered for sale a spiral votive holder that mimicked WSI's proprietary, sculpted

1  design for the same product. It even posted testimonials on its web site from a consumer to the effect
2  that her friends had been confused by the Target votive holder and were unable to distinguish it from
3  the more expensive holder available at Pottery Barn. In 2000, Target infringed a copyrighted reindeer
4  sculpture in a line of reindeer ornaments, candleholders and candelabras.

5      16.    WSI confronted Target regarding the Scary Tree, Spiral Votive Holder and Reindeer
6  infringements and was referred to Target's vendors, who purportedly had agreed to indemnify Target.
7  WSI is informed and believes that Target has extracted these indemnity agreements from its vendors
8  as a condition of doing business with Target even though its vendors have little say in the product
9  specifications that Target has required. These vendors, in turn, in order to support the low margin
10 business with Target and without the capacity to engage in any genuine intellectual property
11 clearance, often will offer these products to other customers such that the infringement is not even
12 confined to Target. For example, the spiral votive holder vendor offered and sold the infringing
13 product to other customers than Target.

14     17.    WSI reached a settlement regarding the spiral votive and reindeer products offered by
15 Target through payments by its vendors, but -- other than a representation by the vendor that sales
16 would cease -- reached no agreement regarding Target's infringement of the Scary Tree copyright. In
17 addition, as recited in WSI's demand letters to Target at the time, these copies were part of a
18 longstanding pattern of copying by Target of WSI's designs for rugs, linens, tableware, furniture,
19 lamps and other products. To date, Target has refused to stop its persistent copying of WSI products
20 and apparently does so without making any effort to avoid infringing WSI's intellectual property rights
21 that are associated with such designs or products.

22     18.    WSI is informed and believes that Target has copied WSI's products and intellectual
23 property intentionally in order to capture and trade upon the goodwill and reputation of WSI's trade
24 dress and its other genuinely affiliated brands. At the same time, Target proclaims to the public that it
25 has a renewed "Focus on Design" and that "[i]n addition to [its] exclusive and fashionably designed
26 offerings, Target partners with world class designers to offer the perfect blend of form and function."
27 It purports to have service mark rights to "Design for All," in an attempt to convey that its products are
28 designed internally or in partnership with others.

COMPLAINT     -5-    Williams-Sonoma, Inc. v. Target Corp.
Case No. _____

**FIRST CLAIM - TRADEMARK INFRINGEMENT**

19. WSI incorporates the allegations of paragraphs 1 - 18 as if each were fully set forth here.

20. WSI's trade dress in its Pottery Barn Christmas Stockings is inherently distinctive and arbitrary.

21. Through extensive use, WSI's trade dress in its Pottery Barn Christmas Stockings has become secondarily associated by consumers with WSI and its pottery barn kids® and related brands.

22. Target's copying of WSI's proprietary and distinctive trade dress constitutes trademark infringement and unfair competition under the Federal Lanham Act, 15 U.S.C. § 1125(a).

23. Because Target adopted WSI's trade dress willfully and in bad faith in order to appropriate WSI's goodwill, WSI is entitled to compensatory damages in the form of actual damages, Target's profits resulting from the infringing acts, treble damages and an award of attorneys' fees under 15 U.S.C. §§ 1117(a) and (b).

24. The specific acts of trademark infringement identified above, as well as Target's entire course of conduct, have caused and are causing WSI great and incalculable damage. Target threatens to continue infringing WSI's trademark and, unless this Court restrains Target, WSI will suffer irreparable injury for which it has no adequate remedy of law.

**SECOND CLAIM -- COPYRIGHT INFRINGEMENT**

25. The allegations of paragraphs 1 - 24 are incorporated by reference as if each were fully set forth here.

26. Target has, by sale of a Halloween tree sculpture that is substantially similar to WSI's copyrighted Scary Tree, engaged in copyright infringement in violation of the Copyright Act.

27. Target's infringements were intentional, willful and in bad faith.

28. Target's copyright infringements have caused WSI great damage and irreparable harm while simultaneously affording Target a competitive advantage. Unless this Court restrains Target from committing further acts of copyright infringement, WSI will suffer further irreparable injury for which it has no adequate remedy of law.

**THIRD CLAIM -- VIOLATION OF CALIFORNIA LAW'S UNFAIR COMPETITION LAW.**

29. The allegations of paragraphs 1 - 28 are incorporated by reference as if each were fully set forth here.

30. Target's willful and intentional acts designed to appropriate WSI's prestige and goodwill, including without limitation its copying and misappropriation of WSI's products, trade dress, copyrighted designs and products; its solicitation of vendors who will copy WSI designs and products and then offer them for sale to Target and others; and its misrepresentations to the public that it is responsible for the design of products sold in its stores, are unlawful, unfair and deceptive in violation of California Business & Professions Code § 17200.

31. Unless Target is restrained from its acts of unfair competition, it will cause WSI great and irreparable injury for which WSI has no adequate remedy at law.

## RELIEF REQUESTED

WHEREFORE, WSI prays that this Court grant it relief as follows:

(1) Order that Target, its agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from infringing, in any manner, WSI's trade dress or trademarks, its copyrights and from further unfairly competing with or infringing WSI's rights or otherwise damaging WSI's goodwill or business reputation, and from continuing to perform in any manner whatsoever any of the other acts complained of in this Complaint, including a specific prohibition against Target's use of WSI's inherently distinctive product designs as a design reference or inspiration;

(2) Order that Target, its agents, servants, employees, and all persons acting under their permission and authority, be enjoined and restrained from any copying of seasonal WSI products;

(3) Order that Target pay to WSI its actual damages and lost profits in an amount to be proven at trial, that Target be required to account for any profits that are attributable to its illegal acts, and that WSI be awarded the greater of either three times Target's profits, three times any damages it has sustained, or statutory damages, as appropriate to each of its claims, plus prejudgment interest;

(4) Order that Target pay all of WSI's costs of suit, including its reasonable attorneys' fees; and

(5)     Award WSI such order and further relief as is just and equitable.

DATED: December 6, 2006

Respectfully submitted,

By: _____
Gregory S. Gilchrist
Townsend and Townsend and Crew LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Attorneys for Plaintiff
WILLIAMS-SONOMA, INC.

60929393 v1

## DEMAND FOR JURY TRIAL

WSI demands that this action be tried to a jury.

DATED: December 6, 2006

Respectfully submitted,

By: _____
Gregory S. Gilchrist
Townsend and Townsend and Crew LLP
Two Embarcadero Center, Eighth Floor
San Francisco, California 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

Attorneys for Plaintiff
WILLIAMS-SONOMA, INC.